**In re ALLEGHENY HEALTH, EDUCATION AND RESEARCH FOUNDATION, Allegheny University of the Health Sciences, Allegheny University Medical Practices, Allegheny Hospitals, Centennial and Allegheny University Hospitals–East, Debtors.**

**William J. Scharffenberger, As Chapter 11 Trustee of Allegheny Hospitals, Centennial, Plaintiff,**

**v.**

**Philadelphia Health Care Trust, Defendant.**

**Bankruptcy Nos. 98–25773–MBM to 98–25777–MBM.**

**Adversary No. 00–2157–MBM.**

United States Bankruptcy Court, W.D. Pennsylvania.

Sept. 18, 2000.

**160**

Claire P. Gutekunst, New York City, Mark E. Freedlander, Philadelphia, PA, for Chapter 11 Trustee.

Howard A. Rosenthal, Robert B. Bodzin, Philadelphia, PA, for Philadelphia Health Care Trust.

---

1: The facts set forth below, unless otherwise indicated, are not the subject of dispute be-

### MEMORANDUM OPINION

M. BRUCE McCULLOUGH, Bankruptcy Judge.

The Chapter 11 bankruptcy trustee (hereafter "the Trustee") of Allegheny Hospitals, Centennial (hereafter "Centennial"), one of the above-captioned debtors, seeks in the instant adversary proceeding to avoid as fraudulent, pursuant to 11 U.S.C. § 544(b)(1) and 12 Pa.C.S.A. §§ 5104(a)(2) and 5105, transfers made and obligations incurred by the predecessor of said debtor that allegedly benefitted, either directly or indirectly, the predecessor of Philadelphia Health Care Trust (hereafter "PHCT"), defendant herein. PHCT now moves, pursuant to Fed. R.Bankr.P. 7012(b) and Fed.R.Civ.P. 12(b)(6), for the dismissal of the Trustee's adversary complaint in its entirety.

### STATEMENT OF FACTS[1]

Effective as of October 31, 1996, three nonprofit subsidiary corporations of PHCT's predecessor, Graduate Health Systems, Inc. (hereafter "GHSI"), which subsidiaries operated four hospitals (hereafter "the GHSI Subsidiaries"), were merged into SDN, Inc. (hereafter "SDN"), which corporation was (a) then a subsidiary of another of the above-captioned debtors, Allegheny Health, Education and Research Foundation ("AHERF"), (b) a shell corporation without any assets or liabilities prior to October 31, 1996, and (c) a predecessor to Centennial. For the sake of clarity, and because it will not affect the Court's subsequent analysis, SDN shall hereafter be referred to as Centennial, GHSI shall hereafter be referred to as PHCT, and the GHSI Subsidiaries shall hereafter be referred to as the PHCT Subsidiaries.

Although Centennial ultimately obtained ownership of the PHCT Subsidiaries from PHCT via the aforesaid merger (hereafter "the Merger"), PHCT and Centennial orig-

tween the parties as reflected by their pleadings and briefs.

inally contemplated, as reflected in Resolutions adopted on August 5, 1996, that Centennial, rather than absorbing the assets and liabilities of the PHCT Subsidiaries via a merger, would be substituted as the sole member of, or would obtain from PHCT all of the shares in, each of the PHCT Subsidiaries. On October 2, 1996, PHCT and Centennial agreed, as reflected in a document to which the Trustee refers in his complaint as an Amendment to Agreement (hereafter "the Amendment"), to, *inter alia*, amend the manner in which Centennial obtained the PHCT Subsidiaries so that such acquisition took the form of a merger.

As part of the Merger, PHCT and Centennial agreed to additional terms, to wit that:

(a) Centennial would provide consideration in several forms to Health Systems International, Inc. (hereafter "HSI"), as well as to an officer of HSI Management Company (hereafter "HSIM"), all of which consideration the parties appear to agree was provided in return for the termination, at or about the time of the Merger, of a preexisting management agreement between PHCT and HSIM;

(b) Centennial would indemnify PHCT to the extent that PHCT either (i) performed on a preexisting guaranty for certain preexisting indebtedness of the PHCT Subsidiaries, or (ii) paid other particular obligations as set forth in the Amendment, including the consideration, as described in the preceding paragraph, that was to be provided by Centennial to HSI and the officer of HSIM;

(c) Centennial would assume liability for, and indemnify PHCT for PHCT's future payment of, certain obligations of PHCT that, according to a Memorandum of Agreement dated October 31, 1996 (hereafter "the Memorandum of Agreement"), had previously been undertaken by PHCT on behalf of the PHCT Subsidiaries;

(d) PHCT would offset an existing intercompany receivable due to it from certain of the PHCT Subsidiaries (hereafter "the Intercompany Receivable") with an existing intercompany debt that it owed to another of said subsidiaries (hereafter "the Intercompany Debt"), and that PHCT, after reconciling said intercompany accounts, would either pay to Centennial any net intercompany debt due from itself or would forgive any net intercompany receivable due to itself;

(e) PHCT would contribute $25 million to Centennial, $10 million of which would be paid on October 31, 1996, and $15 million of which would be paid into an escrow account (hereafter "the Escrow Account" and "the Escrow Funds") on the same date, after which said $15 million would be released in annual $5 million increments to Centennial; and

(f) PHCT would have the right of reimbursement from any funds remaining in the Escrow Account at any particular time for any indemnification claim that PHCT might have against Centennial (hereafter "the Offset Agreement").

The Trustee now contends that many of the terms just described, or, more accurately, the execution or operation of such terms, constituted transfers made or obligations incurred by Centennial that benefitted, either directly or indirectly, PHCT, which transfers and obligations the Trustee contends he may now avoid as fraudulent pursuant to 11 U.S.C. § 544(b)(1) and 12 Pa.C.S.A. §§ 5104(a)(2) and 5105. In particular, the Trustee appears to attack as a fraudulent conveyance:

(a) Centennial's absorption of the liabilities of the PHCT Subsidiaries as of October 31, 1996, at least to the ex-

tent that the amount of said liabilities exceed the value of the assets of the PHCT Subsidiaries as of the same date;

(b) Centennial's incurrence of the obligation to provide consideration to HSI and the officer of HSIM;

(c) Centennial's incurrence of the numerous indemnification obligations to PHCT;

(d) Centennial's assumption of the obligations of PHCT that, according to the Memorandum of Agreement, had previously been undertaken by PHCT on behalf of the PHCT Subsidiaries;

(e) PHCT's elimination of the Intercompany Debt, which elimination the Trustee alleges benefitted PHCT in an amount approximating $52 million, notwithstanding (i) PHCT's simultaneous elimination of the Intercompany Receivable, and (ii) that PHCT forgave, after reconciliation of the intercompany accounts, a net intercompany receivable due to PHCT in the approximate amount of $3.4 million; and

(f) The Offset Agreement.[2]

**2.** PHCT contends in its dismissal motion, its brief in support thereof, and its reply memorandum to the Trustee's opposition memorandum that the Trustee's adversary complaint suffers from numerous pleading deficiencies, at least one of which deficiencies, it is asserted by PHCT, is sufficiently serious such that the Trustee should be directed to accordingly amend his complaint. The Court holds, after an examination of the Trustee's adversary complaint and a consideration of the parties' other papers and oral arguments, that the state of the Trustee's pleading in said complaint is legally deficient so as to merit either a direction to amend or the dismissal, in part, of said complaint only to the extent that the Trustee pursues as a fraudulent conveyance PHCT's elimination of the Intercompany Debt. The preceding holding is warranted with respect to the Trustee's pursuit of a claim based upon PHCT's elimination of the Intercompany Debt because the Court cannot locate within any portion of the Trustee's complaint a reference by the Trustee, either implicitly or explicitly, to PHCT's elimination of the Intercompany Debt, which observation compels the Court to conclude that PHCT cannot have been placed on notice as to that part of the Trustee's fraudulent conveyance action. However, because the Court subsequently holds that the Trustee cannot prevail against PHCT on his claim that PHCT's elimination of the Intercompany Debt constituted a fraudulent conveyance, see infra pp. 171–73, it would be pointless for the Trustee to, and thus the Trustee need not, rectify the aforesaid pleading deficiency. With respect to all of the remaining parts of the Trustee's fraudulent conveyance action, the pleadings within the Trustee's complaint, in the Court's view, sufficiently set forth the basis for said action such that PHCT received adequate notice of the same. The Court concludes as much because the five terms, broadly speaking, of the Merger transaction attacked by the Trustee as fraudulent conveyances aside from PHCT's elimination of the Intercompany Debt are clearly pled in parts of the Trustee's complaint that are then (a) explicitly incorporated, via paragraphs 63 and 68 therein, into the portion of said complaint formally setting forth the Trustee's two counts therein, and (b) implicitly incorporated as well into the same portion of said complaint by the Trustee's use of the phrase "the Graduate Transaction" to refer to all parts of the Merger transaction. Said conclusion by the Court is also warranted because (a) the touchstone of whether a pleading satisfies Fed.R.Civ.P. 8(a)(2), which rule is made applicable to the instant proceeding pursuant to Fed.R.Bankr.P. 7008(a), is whether said pleading provides "fair notice" of the claims pursued therein, which notice the Court concludes is provided by the Trustee's complaint with respect to all portions of his fraudulent conveyance action against PHCT excepting for the extent to which the same is predicated upon PHCT's elimination of the Intercompany Debt, and (b) the heightened pleading standard invoked by Fed.R.Civ.P. 9(b) with respect to pleadings asserting, inter alia, fraud, which rule is made applicable to the instant proceeding pursuant to Fed.R.Bankr.P. 7009, does not apply to a constructive fraudulent conveyance action initiated by a bankruptcy trustee. See In re O.P.M. Leasing Services, Inc., 35 B.R. 854, 862–863 (Bankr.S.D.N.Y.1983) ("the high degree of [pleading] particularity required in a complaint involving active fraud ... [is] inappropriate ... [in an] action involv[ing] merely constructive fraud"); 10 Collier on Bankruptcy ¶ 7009.03 at 7009–4 (Bender 1998) ("When a trustee in bankruptcy pleads a claim of fraud, [whether it be constructive or active fraud,] cases have held that the Rule 9(b) requirement of particularity is relaxed").

As a remedy to accompany a determination that the preceding transfers and obligations constitute fraudulent conveyances, the Trustee seeks, *inter alia*, a monetary recovery against PHCT for the difference between the value of the assets of the PHCT Subsidiaries merged into Centennial via the Merger and the amount of debt incurred by Centennial via the Merger, said debt comprising both the preexisting liabilities of the PHCT Subsidiaries absorbed by Centennial via the Merger and those additional obligations placed upon Centennial as a result of the same transaction.

PHCT seeks dismissal of the entirety of the Trustee's adversary complaint under Fed.R.Civ.P. 12(b)(6) for several reasons, to wit that:

(a) The Trustee, as a matter of law, cannot succeed on his first count against PHCT, wherein the Trustee proceeds under 12 Pa.C.S.A. § 5105, because, according to PHCT, Centennial lacked creditors prior to any of the alleged conveyances for which the Trustee now seeks avoidance;

(b) The Trustee, as a matter of law, cannot succeed on his causes of action proceeding under either 12 Pa.C.S.A. §§ 5104(a)(2) or 5105 because, according to PHCT, Centennial neither transferred property nor incurred an obligation that can be the subject of a fraudulent conveyance action against PHCT under either 12 Pa.C.S.A. §§ 5104(a)(2) or 5105; and

(c) The Trustee, as a matter of law, cannot, pursuant to 11 U.S.C. § 550(a), recover from PHCT the relief that the Trustee seeks as a remedy for the alleged fraudulent conveyances.

The Court will now proceed to address each of the three grounds upon which PHCT seeks dismissal of the Trustee's complaint.

## DISCUSSION

The Trustee cites as statutory authority for his fraudulent conveyance actions against PHCT 11 U.S.C. § 544(b)(1) and 12 Pa.C.S.A. §§ 5104(a)(2) and 5105. 11 U.S.C. § 544(b)(1) allows a bankruptcy trustee to "avoid any transfer of an interest of the debtor in property ... that is voidable under applicable [nonbankruptcy] law by a creditor holding an unsecured claim [against said debtor's bankruptcy estate]." 11 U.S.C.A. § 544(b)(1) (West 1999). 12 Pa.C.S.A. § 5104(a)(2) provides, in pertinent part, that:

A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

. . . . .

without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

(i) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

(ii) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

12 Pa.C.S.A. § 5104(a)(2) (Purdon's 1999). 12 Pa.C.S.A. § 5105 provides that:

A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the

debtor became insolvent as a result of the transfer or obligation.

12 Pa.C.S.A. § 5105 (Purdon's 1999).

### I. *Whether the Trustee is precluded from proceeding against PHCT under 12 Pa.C.S.A. § 5105 for lack of standing, the resolution of which issue turns upon whether Centennial lacked creditors prior to any of the alleged conveyances for which the Trustee seeks avoidance under § 5105?*

■ 11 U.S.C. § 544(b)(1) allows the Trustee to pursue his action under 12 Pa. C.S.A. § 5104(a)(2) and 5105 against PHCT for the avoidance of the conveyances alleged by the Trustee to have been made provided that a creditor of Centennial exists, or creditors of Centennial exist, as of Centennial's petition filing date who then possessed identical causes of action against PHCT. The Court understands PHCT to concede that a creditor of Centennial exists, or creditors of Centennial exist, as of Centennial's petition filing date who then possessed such causes of action against PHCT under 12 Pa.C.S.A. § 5104(a)(2). Such concession by PHCT is understandable given that the only requirement that a creditor must satisfy to have standing to proceed under 12 Pa. C.S.A. § 5104(a)(2) is the mere existence of a claim against a debtor; put differently, standing for a creditor under § 5104(a)(2) does not depend upon whether said creditor's claim arose before or after the conveyance that is sought to be avoided by said creditor. In light of this concession by PHCT, the Trustee likewise possesses standing to pursue his fraudulent conveyance action against PHCT pursuant to 12 Pa.C.S.A. § 5104(a)(2).

However, PHCT contends that there does not exist as of Centennial's petition filing date a creditor of Centennial who then possessed a cause of action under 12 Pa.C.S.A. § 5105 against PHCT for the avoidance of the conveyances alleged by the Trustee to have been made. PHCT contends as much because (a) a creditor can only proceed under 12 Pa.C.S.A. § 5105 if said creditor possesses a claim against a debtor that arose prior to the conveyance that is sought to be avoided by said creditor, and (b) Centennial, according to PHCT, lacked creditors prior to any of the alleged conveyances for which the Trustee now seeks avoidance. Consequently, PHCT contends that the Trustee lacks standing to pursue his fraudulent conveyance action against PHCT pursuant to 12 Pa.C.S.A. § 5105.

The Trustee responds to PHCT's position by contending that Centennial possessed creditors prior to each of the alleged conveyances notwithstanding that (a) Centennial was a shell corporation without assets and liabilities prior to the date of the Merger, and (b) most, if not all, of the alleged conveyances occurred no later than the date of the Merger. The Trustee bases the preceding contention upon his position that the claims of the creditors of the PHCT Subsidiaries that were incurred prior to the date of the Merger also constitute, because of the Merger, claims against Centennial which are deemed to have arisen against Centennial prior to the date of the Merger.

As an initial matter, the Court notes that before it can ascertain whether Centennial possessed creditors with claims that arose prior to the alleged conveyances for which the Trustee now seeks avoidance, the Court must determine when said conveyances occurred. The parties appear to agree that each of the alleged conveyances, which alleged conveyances are described herein on pages 5–6, occurred on the date of the Merger. With the exception of the Offset Agreement, the Court is inclined to agree with the parties; with respect to any transfer that may have occurred by virtue of the entry by PHCT and Centennial into the Offset Agreement, the Court is uncertain as to the nature of any property interest so transferred and thus, in light of 12 Pa.C.S.A. § 5106(1)(ii), (2), and (3), the date upon which such a transfer was made for purposes of § 5105 as well. However, the Court finds that it

need not pin down the precise dates of the alleged conveyances given that the Court (a) can safely conclude, and it does not understand either party to dispute, that none of said alleged conveyances occurred prior to the date of the Merger, (b) concludes, based upon the rationale expressed below, that the claims of the creditors of the PHCT Subsidiaries which were incurred prior to the date of the Merger also constitute, because of the Merger, claims against Centennial which are deemed to have arisen against Centennial prior to the date of the Merger, and (c) can thus conclude that Centennial possessed creditors with claims that arose prior to the alleged conveyances for which the Trustee now seeks avoidance.

■ The predicate for the Court's conclusion that Centennial possessed creditors with claims predating the date of the Merger, to wit the Court's holding that the claims of the creditors of the PHCT Subsidiaries that were incurred prior to the date of the Merger also constitute claims against Centennial which are deemed to have arisen against Centennial prior to the date of the Merger, follows because (a) "[t]he surviving ... corporation [in a merger among nonprofit corporations, subsequent to said merger,] shall thenceforth be responsible for all the liabilities and obligations of each of the corporations so merged," 15 Pa.C.S.A. § 5929(b) (Purdon's 1995), (b) Centennial was the surviving corporation in the Merger, which means that the preexisting claims of the PHCT Subsidiaries became liabilities of Centennial by virtue of the Merger, (c) "the liabilities of the merging ... corporations ... are not affected" by a merger, 9 P.L.E. *Corporations* § 481 at 120 (West 1971), which statement of the law (i) is consistent with § 5929(b)'s proviso that "any claim existing ... against any of ... [the merged] corporations may be prosecuted ... as if such merger ... had not taken place," and (ii) implies that the surviving

corporation to a merger, such as is Centennial herein, inherits not only the liabilities of the nonsurviving corporation to said merger (i.e., the PHCT Subsidiaries herein) but also the dates upon which said liabilities were incurred by said nonsurviving corporation, *see also* Del.Code Ann. tit. 8, § 259(a) (1999) ("all debts, liabilities and duties of the respective constituent corporations [to a merger] shall thenceforth attach to said surviving ... corporation, and may be enforced against it to the same extent *as if said debts, liabilities and duties had been incurred or contracted by it*"); Cal.Corp.Code § 1107(a) (West 2000) ("Upon merger ... the surviving corporation ... shall be subject to all the debts and liabilities of each [of the constituent corporations to a merger] in the same manner as *if the surviving corporation had itself incurred them*"), and (d) the carryover to the surviving corporation to a merger of the dates upon which were incurred the debts absorbed into said surviving corporation preserves for the corresponding claimants the right to challenge as constructively fraudulent under 12 Pa. C.S.A. § 5105 any conveyance by the surviving corporation that occurs on the date of said merger, which result coincides with the principle that "the rights of the creditors [of constituent corporations to a merger] ... are not impaired by the merger." 9 P.L.E. *Corporations* § 481 at 120. The Court also notes that its preceding holding, generically stated, to wit that the claims of creditors of a nonsurviving corporation to a merger constitute claims against the surviving corporation thereto which are deemed to have arisen prior to the date of said merger, is not inconsistent with relevant existing caselaw because all such caselaw, to the Court's knowledge, deals with corporate transactions that were effected other than by way of a merger (i.e., instances wherein a debtor corporation assumed preexisting liabilities other than by virtue of a merger). Put differently, the issue of whether preexist-

ing claims assumed by a debtor corporation in a corporate transaction constitute claims against said debtor corporation which are deemed to have arisen prior to the date of said assumption is, to the Court's knowledge, one of first impression to the extent that the assumption of said claims by said debtor corporation is effected by way of a merger.[3]

Having concluded that the claims of the creditors of the PHCT Subsidiaries that were incurred prior to the date of the Merger constitute claims against Centennial which are deemed to have arisen against Centennial prior to the date of the Merger, the Court can also conclude that there existed as of Centennial's petition filing date creditors of Centennial who then possessed causes of action under 12 Pa.C.S.A. § 5105 against PHCT for the avoidance of the conveyances alleged by the Trustee to have been made. Consequently, the Court must also conclude that the Trustee possesses standing to pursue his fraudulent conveyance action against PHCT in its entirety under 12 Pa.C.S.A. § 5105. Therefore, PHCT's dismissal motion, to the extent that it is predicated upon a lack of standing by the Trustee under 12 Pa.C.S.A. § 5105, must be **DENIED WITH PREJUDICE.**

**3.** Although neither party cites the Court to, and the Court's own research likewise fails to reveal any, relevant caselaw wherein a debtor corporation assumed preexisting liabilities by way of a merger, the Court is aware of bankruptcy court decisions, including those cited to by the parties, involving leveraged buyouts wherein bankruptcy courts split on the issue of whether preexisting claims assumed by a debtor corporation in an LBO constitute claims against said debtor corporation which are deemed to have arisen prior to the date of said assumption for purposes of a fraudulent conveyance analysis. *See In re Sverica Acquisition Corp., Inc.,* 179 B.R. 457, 464–466 (Bankr.E.D.Pa.1995) (arguably answering issue in negative); *In re Morse Tool, Inc.,* 148 B.R. 97, 131–132 (Bankr.D.Mass.1992) (answering issue in negative); *In re Everfresh Beverages, Inc.,* 238 B.R. 558, 578–581 (Bankr.S.D.N.Y.1999) (arguably answering issue in the affirmative). Nevertheless, and as

## II. *Whether Centennial transferred property or incurred an obligation that can be the subject of a fraudulent conveyance action against PHCT under either 12 Pa.C.S.A. §§ 5104(a)(2) or 5105?*

In addition to PHCT's position regarding the Trustee's standing under 12 Pa. C.S.A. § 5105, PHCT also challenges the Trustee's assertion that Centennial made transfers or incurred obligations that can be the subject of a fraudulent conveyance action against PHCT under either 12 Pa. C.S.A. §§ 5104(a)(2) or 5105. The Court will proceed to ascertain whether each of the conveyances alleged by the Trustee to have been made can, as a matter of law, be the subject of an action against PHCT under either 12 Pa.C.S.A. §§ 5104(a)(2) or 5105.

■ As an initial matter, the Court holds, as a matter of law, and based in part upon express statutory language, that the Trustee cannot prevail against PHCT under either 12 Pa.C.S.A. §§ 5104(a)(2) or 5105 unless Centennial (a) made transfers to, or that served to benefit, PHCT, or (b) incurred obligations to, or that benefitted, PHCT. With respect to that portion of the Court's preceding holding regarding transfers made, said holding is dictated by

set forth in the text preceding this footnote, none of the decisions, including *Sverica, Morse Tool,* and *Everfresh,* clearly set forth a fact pattern wherein a debtor corporation assumed preexisting liabilities by way of a merger. For instance, *Sverica* is silent as to the manner in which preexisting liabilities were assumed by the debtor corporation therein, while in *Morse Tool* preexisting liabilities were assumed by the debtor corporation therein via a straight purchase of assets and liabilities within the context of a spinoff from a parent corporation; with respect to *Everfresh,* the Court therein implied that a merger was involved, *see Everfresh,* 238 B.R. at 581 (first full sentence at top of page), although the opinion's statement of facts fails to reveal as much. Consequently, said decisions, in addition to not being binding upon this Court, are not particularly helpful with respect to the issue in question that is faced by this Court.

the language of 11 U.S.C. § 550(a)(1). *See* 11 U.S.C.A. § 550(a)(1) (West 1993).[4] With respect to that portion of said holding regarding obligations incurred, said holding follows as a matter of logic, if not common sense. Indeed, since PHCT is named as the sole party defendant by the Trustee in the instant adversary proceeding, the Trustee can only obtain herein a remedy as against, or from, PHCT, which fact dictates that PHCT have received something from Centennial that can be avoided in order for the Trustee to prevail herein. With respect to obligations incurred by Centennial, the universe of the same that could have garnered something for PHCT such that relief can be afforded the Trustee as against PHCT is comprised of those obligations (a) payable by Centennial directly to PHCT, in which event the same can potentially be avoided outright, or (b) payable by Centennial to someone other than PHCT but the incurrence of which benefitted PHCT, in which event the Court, under its powers of equity if necessary, can recast the same as transfers of value to PHCT which are potentially avoidable and recoverable from PHCT under 11 U.S.C. § 550(a)(1).[5]

The Court will now proceed to apply the aforesaid statement of the law to each of the conveyances alleged by the Trustee to have been made so that the Court may ascertain whether said alleged conveyances can, as a matter of law, be the subject of an action against PHCT under either 12 Pa.C.S.A. §§ 5104(a)(2) or 5105.

**A. Centennial's absorption of the liabilities of the PHCT Subsidiaries as of October 31, 1996 (at least to the extent that the amount of said liabilities exceeded the value of the assets of the PHCT Subsidiaries as of the same date).**

■ Because Centennial absorbed the preexisting liabilities of the PHCT Subsidiaries as of October 31, 1996, via the Merger, there cannot be any doubt, and the Court does not disagree with the Trustee, that Centennial thereby incurred obligations. However, and unfortunately for the Trustee, he can only obtain potential relief under 12 Pa.C.S.A. §§ 5104(a)(2) or 5105 as against PHCT for the absorption of said preexisting liabilities if, and to the extent that, PHCT was benefitted by said absorption given that said obligations were at all times due and owing to someone other than PHCT.[6] Therefore, the Court must resolve the issue of whether PHCT was benefitted by Centennial's absorption via the Merger of the preexisting liabilities of the PHCT Subsidiaries as of October 31, 1996. If, and to the extent, that PHCT was thereby benefitted, said benefit can be recast as a transfer that is potentially avoidable as a fraudulent conveyance and recoverable from PHCT under 11 U.S.C. § 550(a)(1). If PHCT did not thereby receive any benefit, then PHCT did not receive anything that can, within the equitable powers of this Court, be recast as a transfer that is potentially avoidable and recoverable from PHCT.

PHCT presently contends that it was not benefitted in any fashion by Centenni-

4. Outside of the bankruptcy context, a result entirely similar to that called for by 11 U.S.C. § 550(a)(1) is provided by 12 Pa.C.S.A. §§ 5107(a)(1) and 5108(b)(1).

5. The recasting as potentially avoidable transfers of those obligations incurred by Centennial which were payable to someone other than PHCT but the payment of which benefitted PHCT is equitable, if not called for explicitly by Pennsylvania's fraudulent transfer law, because (a) the assumption of such obligations by Centennial, if, and to the extent that, said assumption benefitted PHCT, thereby releases

PHCT of obligations that it would otherwise have had, and (b) the term "transfer" is defined for purposes of Pennsylvania's fraudulent transfer law to include a release from indebtedness. *See* 12 Pa.C.S.A. § 5101(b) (Purdon's 1999) (definition of "transfer" includes "release [from indebtedness]").

6. The parties agree that PHCT, as part of the Merger, agreed to, and did, forgive the net intercompany receivable due to itself in the approximate amount of $3.4 million; therefore, none of the obligations absorbed by Centennial were due and payable to PHCT.

al's absorption via the Merger of the preexisting liabilities of the PHCT Subsidiaries as of October 31, 1996. PHCT contends as much on the basis that the PHCT Subsidiaries were each separately incorporated, thereby insulating PHCT from the reach of the creditors of the PHCT Subsidiaries. The Trustee concedes that the PHCT Subsidiaries were separately incorporated prior to the Merger, *see* Trustee's Compl. ¶ 15, and fails to offer, either in his pleadings or in his brief, any legal theory for how PHCT could have been obligated on the debt of the PHCT Subsidiaries. The Court recognizes the Trustee's allegations that PHCT guaranteed certain of the preexisting indebtedness of the PHCT Subsidiaries, which allegation does not appear to be disputed by PHCT. However, and unfortunately for the Trustee, Centennial's mere absorption of the aforesaid preexisting liabilities did not serve to exonerate PHCT from any guaranty obligation that it might have had regarding said preexisting liabilities. Given the Trustee's failure to offer a legal theory for how PHCT could have been obligated on the debt of the PHCT Subsidiaries, and because the Court itself cannot postulate the same, the Court is at a loss to understand how PHCT benefitted from Centennial's absorption via the Merger of the preexist-

ing liabilities of the PHCT Subsidiaries as of October 31, 1996. Therefore, the Court is constrained to (a) rule at this time that PHCT was not benefitted by Centennial's absorption via the Merger of the preexisting liabilities of the PHCT Subsidiaries as of October 31, 1996, (b) hold that said absorption of liabilities thus does not constitute a transfer that can be the subject of a fraudulent conveyance action against PHCT, and (c) dismiss the Trustee's adversary complaint, and to **GRANT** PHCT's dismissal motion, to the extent that said adversary complaint is predicated upon a claim that said absorption of liabilities constituted a fraudulent conveyance to PHCT.[7]

## B. Centennial's incurrence of the obligation to provide consideration to HSI and the officer of HSIM.

■ There cannot be any doubt, and the Court does not disagree with the Trustee, that Centennial incurred obligations by undertaking to provide consideration to HSI and the officer of HSIM. However, and as was the case with respect to Centennial's absorption of the preexisting liabilities of the PHCT Subsidiaries, Centennial's obligations to HSI and the HSIM officer were due and owing to someone other than

7. PHCT appears to argue that the preexisting creditors of the PHCT Subsidiaries as of the date of the Merger—who, as explained in part I of the instant memorandum opinion, constitute, because of the Merger, the lone creditors (a) with claims against Centennial predating the Merger, (b) who could have proceeded against PHCT under 12 Pa.C.S.A. § 5105 with respect to transfers effectuated via the Merger, and (c) by which the Trustee can also proceed under 12 Pa.C.S.A. § 5105 against PHCT regarding transfers effectuated via the Merger—could not have proceeded against PHCT under § 5105 with respect to Centennial's absorption via the Merger of the preexisting liabilities of the PHCT Subsidiaries as of October 31, 1996, even if PHCT had somehow been obligated on said preexisting liabilities because, according to PHCT, said creditors could not have been harmed by Centennial's said absorption. PHCT appears to argue that said creditors would not have experienced any harm by virtue of said absorption be-

cause, while said creditor's claims were merged into Centennial via the Merger, so too were all of the assets of the PHCT Subsidiaries, and if said creditors could only have looked to said assets for the satisfaction of their claims prior to the Merger, then their financial predicament would not have been affected by the Merger given that, immediately after the Merger, said assets were still the only ones to which said creditors could look for said satisfaction. The Court detects a flaw in, and thus disagrees with, the preceding analysis of PHCT, however. In particular, the Court, contrary to the view of PHCT, concludes that if said creditors could have reached PHCT prior to the Merger, then the extinguishment of PHCT's liability with respect to their claims via Centennial's absorption of said claims would have harmed said creditors by adversely affecting their financial predicament, to wit removing from said creditors an avenue by which their claims could be satisfied.

PHCT, which means that the Trustee can only obtain relief under 12 Pa.C.S.A. §§ 5104(a)(2) or 5105 as against PHCT for said obligations if, and to the extent that, PHCT was benefitted by Centennial's incurrence of said obligations.

PHCT presently contends that it was not benefitted in any fashion by Centennial's incurrence of obligations to HSI and the HSIM officer, which obligations both parties appear to agree were incurred by Centennial in connection with the termination, at or about the time of the Merger, of a preexisting management agreement between PHCT and HSIM (hereafter "the Management Agreement"). PHCT contends as much because, according to PHCT, the PHCT Subsidiaries rather than PHCT were liable as the sole obligors on the Management Agreement prior to the Merger. The Court is inclined to agree with PHCT that, if the PHCT Subsidiaries rather than PHCT were liable as the sole obligors on the Management Agreement prior to the Merger, then PHCT was not benefitted in any fashion by Centennial's obligations incurred in return for the termination of said agreement. The Trustee disagrees, implicitly if not explicitly, with the preceding position of PHCT, however, essentially contending that (a) PHCT rather than the PHCT Subsidiaries was solely liable under the Management Agreement, and (b) PHCT was thus benefitted by Centennial's incurrence of obligations so as to terminate said agreement. PHCT, on page 7 of its Reply to the Memorandum of Chapter 11 Trustee in Opposition to Motion to Dismiss, which document was filed on July 31, 2000, offers the following documentary language which PHCT contends establishes that the PHCT Subsidiaries were solely liable for fee payments due under the Management Agreement:

> "*Source of Payment* GHS[I] shall be responsible for billing each hospital [(i.e., each of the PHCT Subsidiaries)] for its appropriate portion of the management fees [due under this Manage-

ment Agreement] and remitting payment to HSIM...."

However, the Court cannot presently conclude that said language, when viewed in isolation, establishes that which is asserted by PHCT; indeed, it is equally plausible that said documentary language merely memorializes an internal cost accounting scheme of PHCT, whereby, for cost accounting purposes only, PHCT would apportion to each of the PHCT Subsidiaries a portion of the aforesaid fees that were paid by PHCT under the Management Agreement, which fee obligation was perhaps solely that of PHCT. Because the Court is not able at this stage of the litigation to determine whether PHCT was solely liable under the Management Agreement, and thus cannot presently determine as well whether (a) PHCT was benefitted by Centennial's incurrence of obligations so as to terminate said agreement, and (b) Centennial's incurrence of said obligations can constitute a transfer that is potentially avoidable as a fraudulent conveyance, the Court must **DENY WITHOUT PREJUDICE** PHCT's dismissal motion to the extent that it is predicated upon the lack of a potentially avoidable transfer in the form of obligations incurred by Centennial to HSI and the HSIM officer.

While the Court denies PHCT's dismissal motion to the extent just described, the Court notes that, in order to prevail under either 12 Pa.C.S.A. §§ 5104(a)(2) or 5105 with respect to the obligations incurred by Centennial to HSI and the HSIM officer, the Trustee must ultimately establish not only that PHCT was thereby benefitted (and thus that Centennial made a transfer that is potentially avoidable and recoverable from PHCT) but also that PHCT, in return for said benefit, failed to provide to Centennial reasonably equivalent value. With respect to the issue of "reasonably equivalent value," the Court does not presently offer any view as to whether the same was obtained by Centennial presuming, *arguendo*, that Centennial, by incurring obligations to HSI and the HSIM

officer, made a transfer to PHCT that is potentially avoidable as a fraudulent conveyance to PHCT.

## C. Centennial's incurrence of the numerous indemnification obligations to PHCT.

The Court understands PHCT to argue that, as a matter of law, none of the numerous indemnification obligations running from Centennial to PHCT constitute fraudulent conveyances. However, the Court is uncertain as to whether PHCT, in support of the preceding position, argues that (a) said indemnification obligations cannot, as a matter of law, be the subject of a fraudulent conveyance action against PHCT, or (b) Centennial received, as a matter of law, reasonably equivalent value in return for said indemnification obligations.

■ The Court holds, and without any doubt, that said indemnification obligations, since they run directly from Centennial to PHCT, constitute obligations that can be the subject of a fraudulent conveyance action against PHCT under either 12 Pa.C.S.A. §§ 5104(a)(2) or 5105. PHCT appears to argue for a contrary holding by asserting that the incurrence of said indemnification obligations by Centennial did not, or will not, benefit PHCT. However, the Court must reject said reasoning because (a) obligations of Centennial are potentially avoidable as fraudulent conveyances vis-a-vis PHCT provided that they are either payable to, or their incurrence benefitted, PHCT, see supra pp. 166–67, (b) the aforesaid indemnification obligations are obviously payable to PHCT regardless of whether a benefit also ran to PHCT, and (c) PHCT was clearly benefitted by said indemnification obligations in any event given that, absent said obligations on Centennial's part, PHCT could only resort to common law, as opposed to a contract, for the reimbursement that is the subject of the indemnification obligations.

■ As for a contention by PHCT that Centennial received, as a matter of law, reasonably equivalent value in return for said indemnification obligations, the Court does not understand PHCT to have formally predicated its dismissal motion vis-a-vis the Trustee's claim that said obligations constitute fraudulent conveyances upon such a contention. Nevertheless, the essence of PHCT's dismissal motion and PHCT's reply to the Trustee's opposition to said motion raises the issue of whether Centennial received, as a matter of law, reasonably equivalent value in return for said indemnification obligations. The Court, therefore, will address the issue at this time and hold that Centennial did not necessarily receive, as a matter of law, reasonably equivalent value in return for the aforesaid indemnification obligations; put differently, the Court simply cannot ascertain at this time whether Centennial received such reasonably equivalent value. The preceding conclusion applies with equal force to those obligations incurred by Centennial to indemnify PHCT for performance by PHCT of a guaranty of any indebtedness of the PHCT Subsidiaries because, although the PHCT Subsidiaries would have received, as a matter of law, reasonably equivalent value in return for said indemnification obligations had they incurred the same simultaneous to the undertaking of guaranty by PHCT (guaranty of debt of PHCT Subsidiaries would constitute value equal in amount to such an indemnification obligation undertaken by said subsidiaries), said indemnification obligations were incurred by Centennial rather than assumed from the PHCT Subsidiaries, and said indemnification obligations were incurred on the effective date of the Merger, which date is subsequent to the date upon which PHCT undertook its guaranty obligation.

Therefore, the Court must **DENY WITHOUT PREJUDICE** PHCT's dismissal motion to the extent that it pertains to any of the numerous indemnification obligations running from Centennial to PHCT.

**D.** *Centennial's assumption of the obligations of PHCT that, according to the Memorandum of Agreement, had previously been undertaken by PHCT on behalf of the PHCT Subsidiaries.*

 Consistent with the analysis in parts A and B above, the Court holds that (a) Centennial incurred obligations in the form of those obligations which it assumed which had previously been undertaken by PHCT on behalf of the PHCT Subsidiaries, (b) the Trustee can only obtain relief under 12 Pa.C.S.A. §§ 5104(a)(2) or 5105 as against PHCT for Centennial's assumption of said obligations if, and to the extent that, PHCT was benefitted by Centennial's said assumption, (c) PHCT was clearly benefitted by Centennial's said assumption given that, absent said assumption by Centennial, PHCT would have remained liable on the obligations so assumed by Centennial, and (d) the aforesaid assumption of obligations by Centennial can be recast as, and thus constitutes, a transfer that is potentially avoidable as a fraudulent conveyance and recoverable from PHCT under 11 U.S.C. § 550(a)(1). In light of the preceding, the Court must **DENY WITHOUT PREJUDICE** PHCT's dismissal motion to the extent that it is predicated upon the lack of a potentially avoidable transfer in the form of those obligations assumed by Centennial which had previously been undertaken by PHCT on behalf of the PHCT Subsidiaries. With respect to the issue of "reasonably equivalent value," the Court does not presently offer any view as to whether the same was obtained by Centennial in return for its assumption of the obligations just described.

**E.** *PHCT's elimination of the Intercompany Debt, which elimination the Trustee alleges benefitted PHCT in an amount approximating $52 million.*

 The Court agrees with the Trustee that the elimination of the Intercompany Debt, which debt the Trustee estimates at approximately $52 million, constitutes a transfer of assets from Centennial to PHCT that is potentially avoidable under 12 Pa.C.S.A. §§ 5104(a)(2) or 5105 and recoverable from PHCT pursuant to 11 U.S.C. § 550(a)(1). *See* 12 Pa. C.S.A. § 5101(b) (definition of "transfer" includes "release [from indebtedness]"). However, said transfer ultimately is not avoidable as a fraudulent conveyance because Centennial, as a matter of law, received reasonably equivalent value from PHCT in return for said transfer.

The Court acknowledges that PHCT does not formally assert as a ground for the dismissal of any portion of the Trustee's fraudulent conveyance complaint that Centennial received, as a matter of law, reasonably equivalent value in return for any particular conveyance alleged by the Trustee to have been made to PHCT. However, and as PHCT points out in its Reply to the Memorandum of Chapter 11 Trustee in Opposition to Motion to Dismiss, the Trustee failed to make any mention of the elimination of the Intercompany Debt in his adversary complaint, instead first advancing as a fraudulent conveyance the elimination of said debt in his opposition memorandum, which memorandum, of course, was not filed until after PHCT had moved to dismiss. Because of the timing of the Trustee's allegations regarding the elimination of the Intercompany Debt, the Court finds it appropriate for PHCT to offer, via its reply to the Trustee's opposition memorandum, as a separate ground for said dismissal motion that Centennial, as a matter of law, received reasonably equivalent value from PHCT in return for the elimination of the Intercompany Debt. Therefore, the issue of whether Centennial, as a matter of law, received reasonably equivalent value from PHCT in return for the elimination of the Intercompany Debt is properly before the Court at this time. As the Court will explain in the ensuing paragraph, Centennial, as a matter of law, received reasonably equivalent value from PHCT in return for the elimination of the

Intercompany Debt, which conclusion dictates that said elimination of debt is not avoidable as a fraudulent conveyance.

The Court concludes that Centennial received reasonably equivalent value from PHCT in return for the elimination of the Intercompany Debt by virtue of PHCT's simultaneous elimination of the Intercompany Receivable, which receivable due to PHCT exceeded in amount the Intercompany Debt by some $3.4 million (which $3.4 million net receivable due to PHCT was forgiven by PHCT as part of the Merger transaction). The Trustee argues for a contrary holding by the Court by contending that the elimination of the Intercompany Receivable constitutes illusory consideration on PHCT's part because, prior to the Merger, said receivable due to PHCT was not likely collectible by PHCT from those PHCT Subsidiaries liable to PHCT. However, and unfortunately for the Trustee, the Merger served to, *inter alia*, make Centennial liable for the payment of the Intercompany Receivable to PHCT. Because Centennial assumed both the Intercompany Debt, which became an asset to Centennial, and the Intercompany Receivable, which became a liability of Centennial (and no less so because of the unlikely prospect that it would have been paid prior to the Merger), the elimination of the latter constitutes real, rather than illusory, consideration that was given to Centennial in return for the elimination of the former. Moreover, because the Intercompany Receivable exceeds in amount the Intercompany Debt, the elimination of the former necessarily constitutes reasonably equivalent value given in return for the elimination of the latter. *Cf. In re Parkway Calabasas Ltd.*, 89 B.R. 832, 839 (Bankr.

C.D.Cal.1988) (hypothetical merger of two affiliated limited partnerships outside of bankruptcy would eliminate the harm occasioned to the creditors of one of said partnerships, as well as the unjust enrichment occasioned to the creditors of the other partnership, by virtue of the former partnership's payment of the debt of the latter partnership, which payment, absent said hypothetical merger, would constitute an avoidable fraudulent transfer).[8]

Because Centennial, as a matter of law, received reasonably equivalent value from PHCT in return for the elimination of the Intercompany Debt, the transfer to PHCT in the form of said elimination of debt is not avoidable as a fraudulent conveyance under either 12 Pa.C.S.A. §§ 5104(a)(2) or 5105. Consequently, the Court must dismiss the Trustee's adversary complaint and **GRANT** PHCT's dismissal motion to the extent that said complaint is predicated upon a claim that the elimination of the Intercompany Debt constituted an avoidable fraudulent conveyance to PHCT.

### F. *The Offset Agreement.*

■ The Court agrees with the Trustee that the right of reimbursement granted to PHCT from funds remaining in the Escrow Account for the satisfaction of indemnification claims against Centennial constitutes a transfer of some sort of property interest from Centennial to PHCT that is potentially avoidable under 12 Pa. C.S.A. §§ 5104(a)(2) or 5105 and recoverable from PHCT pursuant to 11 U.S.C. § 550(a)(1). Therefore, the Court must **DENY WITHOUT PREJUDICE** PHCT's dismissal motion to the extent that it is predicated upon the lack of a potentially

---

**8.** The Court need not ponder whether the Trustee would have a viable fraudulent conveyance action against PHCT for the elimination of the Intercompany Debt if Centennial's acquisition of the PHCT Subsidiaries had been effected other than by merger because (a) said acquisition, in fact, was effected via the Merger, and (b) the Trustee does not allege, and the Court cannot envision, that PHCT forced upon Centennial the form in

which said acquisition was effected. In fact, with respect to the latter point, PHCT asserts that the form of Centennial's acquisition of the PHCT Subsidiaries was amended in October 1996 at the specific request of AHERF, parent to Centennial, so as to allow AHERF to recover substantial Medicare recapture payments which were estimated by AHERF to approximate $25 million in amount.

avoidable transfer in the form of that which PHCT obtained via the Offset Agreement. However, the Court does not presently offer any view as to whether PHCT provided reasonably equivalent value in return for Centennial's execution of the Offset Agreement.

**III.** *Whether the Trustee can, as a matter of law, recover from PHCT, pursuant to 11 U.S.C. § 550(a), the relief that the Trustee seeks as a remedy for the alleged fraudulent conveyances.*

 The third ground upon which PHCT bases its dismissal motion, to wit that 11 U.S.C. § 550(a) does not provide for the type of remedy sought by the Trustee as relief in his adversary complaint, is partially addressed in part II of the instant memorandum. In said part II the Court holds, *inter alia*, that any obligations incurred by Centennial that are payable to someone other than PHCT but which are proven by the Trustee to have benefitted PHCT will be recast by the Court as transfers of value to PHCT, which transfers will then be potentially avoidable as fraudulent transfers under 12 Pa.C.S.A. §§ 5104(a)(2) or 5105 and, if so avoided, may then be recovered from PHCT under 11 U.S.C. § 550(a)(1). *See supra* p. 167. The nature of any such recovery granted under 11 U.S.C. § 550(a)(1) will likely be a monetary judgment against PHCT for the difference between the obligations assumed by Centennial that are recast as transfers to PHCT and any consideration given by PHCT in return for said recast transfers. The remedy described in the preceding sentence is authorized by § 550(a)(1), which provision allows for the recovery by the Trustee of, *inter alia*, the value of any property transfer that is avoided under, *inter alia*, 11 U.S.C. § 544, which statutory provision is the one under which the Trustee proceeds in his adversary complaint. Of course, the amount of the recovery sought by the Trustee in his complaint will necessarily differ from that which the Trustee can now

potentially recover given that the Court, in part II above, orders the dismissal of that portion of the Trustee's complaint which ultimately sought a judgment merely for the difference between the amount of the preexisting liabilities of the PHCT Subsidiaries as of October 31, 1996, which liabilities were absorbed by Centennial via the Merger, and the value of the assets of the same subsidiaries which were likewise assumed by Centennial via the Merger.

Of course, the Trustee need not seek a remedy under 11 U.S.C. § 550(a) to the extent that he succeeds in avoiding any obligation of Centennial which is payable directly to PHCT—i.e., the indemnification obligations discussed above—given that such successful avoidance will eventually, if not automatically, result in the striking of any claim by PHCT against Centennial's bankruptcy estate based upon said obligation.

Finally, and of course, the Trustee is authorized under 11 U.S.C. § 550(a)(1) to seek from PHCT the recovery of any property interest that was conveyed to PHCT via the Offset Agreement if, and to the extent that, said transfer is successfully avoided as a fraudulent transfer under 12 Pa.C.S.A. §§ 5104(a)(2) or 5105.

### CONCLUSION

PHCT's motion to dismiss the Trustee's adversary complaint in its entirety pursuant to Fed.R.Bankr.P. 7012(b) and Fed.R.Civ.P. 12(b)(6) is **GRANTED** in part, **DENIED WITH PREJUDICE** in part, and **DENIED WITHOUT PREJUDICE** in part. PHCT's dismissal motion is granted and the Trustee's adversary complaint is accordingly dismissed to the extent that said complaint is predicated upon a claim that the following constituted fraudulent conveyances to PHCT:

(a) Centennial's absorption via the Merger of the preexisting liabilities of the PHCT Subsidiaries as of October 31, 1996 (at least to the extent that the amount of said liabilities

**174**

exceeded the value of the assets of the PHCT Subsidiaries as of the same date); and

(b) The elimination of the Intercompany Debt.

PHCT's dismissal motion is denied with prejudice and the Trustee's adversary complaint may accordingly proceed to the extent that PHCT's dismissal motion is predicated upon a lack of standing by the Trustee under 12 Pa.C.S.A. § 5105. Finally, PHCT's dismissal motion is denied without prejudice and the Trustee's adversary complaint may accordingly proceed to the extent that said complaint is predicated upon a claim that the following constituted fraudulent conveyances to PHCT:

(a) Centennial's incurrence of the obligation to provide consideration to HSI and the officer of HSIM;

(b) Centennial's incurrence of the numerous indemnification obligations to PHCT;

(c) Centennial's assumption of the obligations of PHCT that, according to the Memorandum of Agreement, had previously been undertaken by PHCT on behalf of the PHCT Subsidiaries; and

(d) The Offset Agreement.